# No. 24-1426

====================================================================

## UNITED STATES COURT OF APPEALS FOR THE SECOND CIRCUIT

───────────────

S.G., M.G., on behalf of themselves and others similarly situated,

Plaintiffs-Appellants,

v.

Bank of China U.S.A., BOC International Holdings Ltd., BOCI Commodities & Futures (USA) LLC, CME Group Inc., and New York Mercantile Exchange, Inc.,

Defendants-Appellees,

Bank of China Ltd.,

Defendant.

───────────────

## On Appeal from the United States District Court for the Southern District of New York

====================================================================

## APPELLANT BRIEF

====================================================================

John Y. Tang
Tang PC
1702 Flushing Ave
Ridgewood, NY 11385
(212) 363-0188
john.tang@gettang.com

Wenjie Cai
Tang PC
1702 Flushing Ave
Ridgewood, NY 11385
(212) 363-0188
ericat@gettang.com

# **<u>TABLE OF CONTENTS</u>**

**Page**

INTRODUCTION…………..……………………………………… 1

JURISDICTIONAL STATEMENT …………………………………….. 2

STATEMENT OF ISSUES PRESENTED FOR REVIEW……….………….. 2

STATEMENT OF THE CASE……………………………………….. 2

STANDARD OF REVIEW…………………………………………… 5

ARGUMENT………………………………………………….. 6

    I.     APPELLANTS-PLAINTIFFS ADEQUATELY PLEAD THE CLAIMS AGAINST BOC USA, BOCI USA AND BOCI………… 6

    II.    CME ARE NOT IMMUNE FROM THE CLAIMS FOR NEGLIGENCE AND AIDING AND ABETTING FRAUD...……... 13

    III.   APPELLANTS-PLAINTIFFS' REQUEST TO AMEND SHOULD BE GRANTED………………………………………………… 18

CONCLUSION……………………………..……………………........... 20

# TABLE OF AUTHORITIES

**Cases**                                                                                     **Page(s)**

*AEP Energy Services Gas Holding Co. v. Bank of America*, N.A.,
    626 F.3d 699 (2d Cir.2010)……………………………………………...   19

*American Agriculture Movement v. Bd. of Trade*,
    977 F.2d 1147 (7th Cir. 1992)…………….……………………………   15, 16

*Anderson News, L.L.C. v. American Media, Inc.*,
    680 F.3d 162 (2d Cir.2012)……………………………………………..   6, 19

*Atuahene v. City of Hartford*,
    10 F. App'x. 33 (2d Cir. 2001)………………………………………..   8

*Bell Atlantic Corp. v. Twombly*,
    550 U.S. 544 (2007)…………………………………………………....   6, 8, 11

*Bishop v. Commodity Exchange, Inc.*,
    564 F. Supp. 1557 (S.D.N.Y. 1983)…………………………………...   16

*Chambers v. Time Warner, Inc.*,
    282 F.3d 147 (2d Cir.2002)………………………...…………………..   6, 11

*Chicago N.W. Transp. Co. v. Kalo Brick Tile Co.*,
    450 U.S. 311 (1981)…………………………………………………..   13

*Dannenberg v. Dorison*,
    603 F. Supp. 1238 (S.D.N.Y. 1985)…………………………………..   12

*DGM Inv., Inc. v. New York Futures Exch., Inc.*,
    265 F.Supp.2d 254 (S.D.N.Y. 2003)………………………...............   17

*Florida Lime and Avocado Growers, Inc. v. Paul*,
    373 U.S. 132 (1963) …………………………………..……………...   14

*Ghandour v. Shearson Lehman Hutton, Inc.*,
    174 A.D.2d 317 (N.Y. App. Div. 1991)……………………………...   14

*Kerr v. First Commodity Corp. of Boston*,
    735 F.2d 281 (8th Cir. 1984)……………………………………… 14

*Khalid Bin Talal Bin Abdul Azaiz Al Seoud v. E.F. Hutton Co.*,
    720 F. Supp. 671 (N.D. Ill. 1989)……………………………….. 15

*Kotz v. Bache Halsey Stuart, Inc.*,
    685 F.2d 1204 (9th Cir. 1982)…………………………………... 14

*Krys v. Pigott*,
    749 F.3d 117 (2d Cir. 2014)…………………………………….. 6, 19

*Luce v. Edelstein*,
    802 F.2d 49 (2d Cir. 1986)……………………………………… 12

*Minpeco, S.A. v. Hunt*,
    693 F.Supp. 58 (S.D.N.Y. 1988)……………………………….... 18

*Muto v. CBS Corp.*,
    668 F.3d 53 (2d Cir.2012)……………………………………… 5, 6

*Nader v. Allegheny Airlines, Inc.*,
    426 U.S. 290 (1976)…………………………………………….. 13

*Patry v. Rosenthal Co.*,
    534 F. Supp. 545 (D.Kan. 1982)……………………………….. 14

*P.J. Taggares Co. v. New York Mercantile Exchange*,
    476 F. Supp. 72 (S.D.N.Y. 1979)……………………………….. 17

*Sam Wong & Son, Inc. v. New York Mercantile Exchange*,
    735 F.2d 653 (2d Cir. 1984)…………………………………….. 12, 17

*Schlick v. Penn-Dixie Cement Corp.*,
    507 F.2d 374 (2d Cir. 1974)……………………………………. 12

*S.E.C. v. Gabelli*,
    653 F.3d 49 (2d Cir.2011)……………………………………… 6

*Silkwood v. Kerr-McGee Corp.*,

464 U.S. 238 (1984)……………………………………………….. 13

*Strobl v. New York Mercantile Exch.*,
    561 F. Supp. 379 (S.D.N.Y. 1983)……………………………… 16, 18

*United States v. Brien*,
    617 F.2d 299 (1st Cir. 1980)…………………………………….. 14

*Witzel v. Chartered Systems Corp. of New York, Ltd.*,
    490 F. Supp. 343 (D.Minn. 1980)……………………………….. 15

*W W Farms, Inc. v. Chartered Systems, Etc.* (N.D.Ind. 1982),
    542 F. Supp. 56 (N.D. Ind. 1982)……………………………….. 15

## **Statutes & Rules**

7 U.S.C. § 1……………………………………………………….. 2

7 U.S.C. § 2……………………………………………………….. 14, 16

28 U.S.C. § 1292………………………………………............ 2

Fed. R. Civ. P. 8………………………………………………….. *passim*

Fed. R. Civ. P. 9………………………………………………….. 4, 5, 11, 13

Fed. R. Civ. P. 9(b)……………………………………………….. 4, 12

Fed. R. Civ. P.15(a)(2)…………………………………………… 19

N.Y. Gen. Bus. Law § 350……………………………………….. 2

iv

# INTRODUCTION

Appellants-Plaintiffs S.G. and M.G.'s ("Appellants-Plaintiffs") Class Action Complaint (the "Complaint") (Appellant Appendix E, hereinafter "AA E")[1] asserts in detail a range of statutory and common law claims against Defendants Bank of China Ltd. ("BOC"), Bank of China USA ("BOC USA"), BOC International Holdings Ltd. ("BOCI"), BOCI Commodities & Futures (USA) LLC ("BOCI USA"), CME Group Inc. ("CME Inc.") and New York Mercantile Exchange, Inc. ("NYMEX"). The term "BOC Group" is used when Defendants BOC, BOC USA, BOCI and BOCI USA are referred to collectively. Similarly, the term "CME" is for Defendants CME Inc. and NYMEX when they are referred to collectively.

Defendant BOC, a corporation in China, is still in the process of being served.

All other Defendants ("Appellees-Defendants") had filed motions to dismiss. The District Court granted those motions. Hence Appellants-Plaintiffs appeal from that decision.

---

[1] Appellant Appendix includes the Appellants-Plaintiffs' legal memo in opposition to Defendant BOC USA's motion to dismiss (Dkt No. 52) because of its independent relevance to the District Court's denial of request to amend pursuant to FRAP 30(a)(2).

## JURISDICTIONAL STATEMENT

The Court has the jurisdiction over this interlocutory appeal pursuant to 28 U.S.C. § 1292.

## STATEMENT OF ISSUES PRESENTED FOR REVIEW

The District Court's decision (AA B, C & D) raises the issues (1) whether errors of law and facts were made when the District Court granted Appellees-Defendants' motions to dismiss; and (2) specific to Appellees-Defendants CME, whether the District Court erred as a matter of law and facts to rule that the Commodity Exchange Act (CEA) preempts the state law claims, including negligence and aiding and abetting fraud, which have no bearing upon the actual operation of the commodity futures markets; and (3) whether the District Court properly exercised the discretion to deny Appellants-Plaintiffs' request to amend the Complaint.

## STATEMENT OF THE CASE

In the underlying action, Appellants-Plaintiffs assert claims for violation of Commodity Exchange Act (CEA), 7 U.S.C. § 1, et seq., violation of State of New York false advertising law N.Y. Gen. Bus. Law § 350, fraud, conspiracy to defraud, breach of contract, breach of fiduciary duty and negligence against Defendants BOC,

BOC USA, BOCI and BOCI USA, alleging that they colluded in an unlawful scheme to devise, implement and market to mass retail market the extremely risky Crude Oil Treasure (the "COT") investment product.[2] BOC and BOCI USA obscured the true identity of the owners of COT WTI futures contracts and fraudulently dispersed the WTI futures contracts positions in different shell accounts to circumvent the WTI future contracts month position limit of 3000 contracts.

Defendant BOC has collected more than $10.8 billion funds from Appellants-Plaintiffs as the full security deposit for COT accounts. A fraction of those funds were used for the WTI futures contracts, the trading of which was carried out by BOCI USA. Most of Appellants-Plaintiffs' funds were misappropriated by BOC, BOCI and BOC USA who fraudulently transferred those funds into the U.S. through the systems of Federal Reserve of New York for unrelated and undisclosed purposes. In doing so, BOC, BOCI and BOC USA obfuscated the original and source of the funds and concealed the identity of the owner in violation of Bank Secrecy Act ("BSA") and related regulations.

To make the matter worse, BOC and BOCI USA managed the COT in a

---

[2] The COT is an extremely risky derivative investment product encapsulating the West Texas Intermediate ("WTI") light sweet crude oil futures contracts traded on the NYMEX, a futures and options exchange owned and operated by Appellees-Defendants CME Group Inc. ("CME Inc.") and New York Mercantile Exchange, Inc. ("NYMEX").

reckless and negligent manner, especially in the case of May 2020 WTI futures contracts ("WTI2005"), in breach of their contractual and fiduciary duty owed to Appellants-Plaintiffs, resulting in irreparable and severe harm to Appellants-Plaintiffs.

Additionally, Appellants-Plaintiffs assert the common law claims for negligence and aiding and abetting fraud against Defendant CME, alleging, *inter alia*, that for the purposes of raking in a great deal of fees, CME facilitated, aided and abetted, or willfully neglected BOC and BOCI USA's unlawful scheme by permitting their illicit trading of WTI futures contracts on the NYMEX, also by ignoring BOC Group's scheme in hiding the identity of the true owners of the COT WTI futures contracts and the use of shell accounts.

In its opinion, the District Court ruled that all claims, Counts One through Seven against Appellees-Defendants BOC USA and BOCI USA, fail under Rules 8 and 9, (AA B07) , because "[t]he complaint contains insufficient allegations specific to either BOC USA or BOCI USA. Instead, it makes allegations against 'BOC Group,' a term it defines to include four different BOC-affiliated entities." (AA B07). Additionally, fraud-related claims, including Counts One, Three, Four, and Eight, "fall short also of Rule 9(b) because they do not support an inference of fraud as to

each of BOC USA and BOCI USA."[3] (AA B08). For the same reasons, the District Court granted BOCI's motion to dismiss as well. (AA C15).

As for CME, the District Court ruled that Defendant CME are immune from the claims because the alleged wrongdoing "springs from activity core to CME's regulatory function as a self-regulatory organization ("SRO"). (AA B08).

Further, the District Court denied Plaintiffs-Appellants' application for leave to amend the Complaint "because they give no indication of how amending would cure the complaint's numerous deficiencies." (AA B12).

Appellants-Plaintiffs beg to differ. For the reasons set forth fully below, Appellants-Plaintiffs contend that the claims against Appellees-Defendants BOC USA, BOCI USA and BOCI satisfy the pleadings requirements under Rule 8 and 9; Appellees-Defendants CME Inc. and NYMEX are not immune from the claims for negligence and aiding and abetting fraud; and Judge Kaplan abused his discretion in denying the request for leave to amend.

## STANDARD OF REVIEW

On an appeal from a grant of a motion to dismiss, this Court reviews de novo the decision of the District Court. *See, e.g., Muto v. CBS Corp.*, 668 F.3d 53, 56 (2d

---

[3] Count Eight for aiding and abetting fraud was asserted against Defendant CME, not Defendants BOC USA and BOCI USA. (AA E39, ¶¶ 121-124)

Cir.2012). The Court construes the complaint liberally, accepting all factual allegations in the complaint as true, and drawing all reasonable inferences in the plaintiff's favor. *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir.2002). "To survive a motion to dismiss, however, a complaint must allege a plausible set of facts sufficient to raise a right to relief above the speculative level." *S.E.C. v. Gabelli*, 653 F.3d 49, 57 (2d Cir.2011)

A district court's denial of a request for leave to amend a pleading is reviewed for abuse of discretion. *Krys v. Pigott*, 749 F.3d 117, 134 (2d Cir. 2014) (citations omitted). "An abuse of discretion may consist of an erroneous view of the law, a clearly erroneous assessment of the facts, or a decision that cannot be located within the range of permissible decisions." *Anderson News, L.L.C. v. American Media, Inc.*, 680 F.3d 162, 185 (2d Cir.2012), cert. denied,—— U.S. ——, 133 S.Ct. 846, 184 L.Ed.2d 655 (2013).

## ARGUMENT

## I. APPELLANTS-PLAINTIFFS ADEQUATELY PLEAD THE CLAIMS AGAINST BOC USA, BOCI USA AND BOCI

The Supreme Court held that the pleading standard Rule 8 announces does not require "detailed factual allegations," but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). It requires plaintiff to plead

"enough fact[s] to raise a reasonable expectation that discovery will reveal evidence of [his claim]" *Id.* at 556.

Here, Appellants-Plaintiffs alleged in detail and with specificity that Defendant BOC sold COT to retail customers without China Banking & Insurance Regulatory Commission's ("CBIRC") approval and was later sanctioned by CBIRC. (AA E24, 34 , ¶¶ 30, 31, 78). BOC knowingly evaded regulations and misclassified COT as safe wealth management product. (AA E24, ¶ 33); misrepresented to prospective COT customers that it was approved by CBIRC to sell COT, (AA E24, ¶ 34); aggressively and purposefully marketed COT as highly lucrative product with low risk for inexperienced investors. (AA E24-25, ¶ 35). Appellees-Defendants BOC USA, BOCI and its subsidiary BOCI USA worked with Defendant BOC in carrying out the trading and clearing of COT's WTI crude oil futures contracts at CME, (AA E24, ¶ 31); BOC and Appellees-Defendants BOC USA and BOCI fraudulently and unlawfully routed and transferred, in violation of related regulations, the vast amount of COT customers' funds of more than $10.8 billion through the system of Federal Reserve of New York into the U.S. financial market for unrelated and undisclosed purposes with the source of the funds and the identity of the owner being concealed in violation of BSA and related regulations. (AA E26, ¶¶ 41-42); BOC and Appellee- Defendant BOCI USA obscured the true identity of the owners of COT WTI futures contracts and fraudulently dispersed the WTI

futures contracts positions in different shell accounts to circumvent the WTI future contracts month position limit of 3000 contracts. (AA E27, ¶ 43); and so forth. These detailed factual allegations are far more sufficient to meet the requirement of Rule 8 and should "raise a right of relief above the speculative level, on the assumption that all of the allegations in the complaint are true." *Bell Atl. Corp.*, 550 U.S. at 556, supra.

However, the District Court opined that particular to Appellees-Defendants BOC USA, BOCI and BOCI USA, the Complaint only makes impermissible group pleadings and fails to give Defendants notice of what each is alleged to have done.

Appellants-Plaintiffs contend that this finding is incorrect. Rule 8 "requires, at a minimum, that a complaint give each defendant fair notice of what the Appellants-Plaintiffs claim is and the ground upon which it rests." *Atuahene v. City of Hartford*, 10 F. App'x. 33, 34 (2d Cir. 2001). Pleadings fail to meet that minimum requirement where allegations "lump[ ] all the Appellees-Defendants together in each claim and provide no factual basis to distinguish their conduct." *Id.*

In the Complaint, Appellants-Plaintiffs use the term "BOC Group" when Defendant BOC and Appellee-Defendants BOC USA, BOCI and BOCI USA are referred to collectively. This is only natural and logical because Defendant BOC is the parent of the others and they are part of the same alleged scheme. Although the

8

term "BOC Group" is used from time to time, Appellants-Plaintiffs distinguish one's alleged conducts from the others'. For instance,

- <u>BOC Group</u> marketed the highly risky COT to mass retail market and <u>BOCI</u> and <u>BOCI USA</u> carried out the trading and clearing of COT crude oil futures contracts. (AA E24, ¶ 31).

- BOC, BOC USA and BOCI fraudulently and unlawfully routed and transferred, in violation of related regulations, the vast amount of COT customers' funds of more than $10.8 billion through the system of Federal Reserve of New York into the U.S. financial market for unrelated and undisclosed purposes with the source of the funds and the identity of the owner being concealed in violation of BSA and related regulations. (AA E26, ¶¶ 41-42).

- BOCI USA obscured the true identity of the owners of COT WTI futures contracts and fraudulently dispersed the WTI futures contracts positions in different shell accounts to circumvent the WTI future contracts month position limit of 3000 contracts. (AA E27, ¶ 43).

- <u>BOC Group</u> decided on the bizarrely wrong rollover practice. <u>BOC and BOCI USA</u> failed to execute the automatic rollover. (AA E27, ¶ 44).

- BOC's acts to misrepresent the risk associated with the rollover and Defendant BOC group did not complete the automatic rollover. (AA E29, ¶ 52).

- BOC dealt COT customers with another fatal blow by recklessly and arbitrarily restricted the trading time for COT customers. (AA E28-29, ¶ 48).

- BOCI and BOCI USA did not carry out the automatic liquidation of the COT accounts as specifically instructed by Defendant BOC. (AA E30, ¶ 55).

The Complaint gives each defendant fair notice of what the claim is and the ground upon which it rests, for example, BOCI USA provided trading and clearing service to BOC, obscured the true identity of the owners of COT WTI futures contracts and fraudulently dispersed the WTI futures contracts positions in different shell accounts to circumvent the WTI future contracts month position limit of 3000 contracts; BOC USA and BOCI were involved in the transfer of misappropriated customer funds into the U.S. Accordingly, the pleadings satisfy the requirements under Rule 8.

Further, there exists extensive information, including Appellants-Plaintiffs' own investigation, media reports, research papers, etc., that provides in-depth analysis of COT and WTI2005 debacle on May 20, 2020. The Complaint can be readily enhanced with more specific details, including time, period of time and

conducts with more finer grains can be added and attributed to each Appellee-Defendant if the original pleadings are deemed insufficient under Rule 8.

In consideration of the details of factual allegations found in the Complaint, as exemplified above about BOCI USA and BOCI USA's role in the scheme, Appellants-Plaintiffs submit that the District Court did not construe the Complaint "liberally, accepting all factual allegations in the complaint as true, and drawing all reasonable inferences" in the Appellants-Plaintiffs' favor. *Chambers* at 152.

Appellants-Plaintiffs also contend that the pleadings present enough facts as to the plausibility of BOC Group Defendants' scheme to raise a reasonable expectation that discovery will reveal more evidence of their claim. *Bell Atlantic Corp.* at 556. The District Court correctly distinguished COT from WTI futures contracts, but it failed to see WTI futures contracts is the underlying products of COT and is an integral part of BOC's COT business. In sync with the COT customers' buys and sells order, BOC must execute the orders for the corresponding WTI futures contracts. In this sense, BOC could not have implemented COT without the trading of WTI futures contracts and the involvement of BOC USA and BOCI USA albeit the details of their collusion can only be revealed in discovery.

Accordingly, the dismissal under Rule 8 at this stage is not warranted.

As for the pleading requirements under Rule 9, the District Court concluded that the pleadings fall short, specifying that the allegations do not, among other

necessary things, specify or detail fraudulent statements made by each of the defendants. This conclusion was incorrect. In actions involving multiple defendants, Rule 9(b) requires the plaintiff to plead facts from which fraud may be reasonably inferred as to each defendant. *See, e.g., Dannenberg v. Dorison*, 603 F. Supp. 1238, 1241 (S.D.N.Y. 1985). However, pleading requirements may be relaxed when the information is exclusively within the defendant's knowledge so long as the factual basis for allegations based upon information and belief are adequately set forth. *Luce v. Edelstein*, 802 F.2d 49, 54 n. 1 (2d Cir. 1986); *Schlick v. Penn-Dixie Cement Corp.*, 507 F.2d 374, 379 (2d Cir. 1974). In the underlying case, many of the specifics of the fraud which took place, such as time, place, and steps taken to misrepresent to COT customers and misappropriate the COT customers' funds, are within the sole knowledge of the BOC Group Defendants. Dismissal on the ground that facts within Defendants' knowledge have not yet been proven in the pleading stage is "particularly inappropriate." *See Sam Wong & Son, Inc. v. New York Mercantile Exchange*, 735 F.2d 653, 678 (2d Cir. 1984). The allegations make it clear that Defendants BOC, BOC USA, BOCI and BOCI USA colluded with each other and each of them took active action in furtherance the fraudulent scheme. In the Complaint, the conduct was attributed to each Defendant in the BOC Group where the term BOC Group is used. As such the Complaint alleges the elements of fraud were committed by each Defendants jointly or separately.

Accordingly, the pleadings against Appellees-Defendants BOC USA, BOCI, BOCI USA are sufficient under Rule 9.

## II. CME ARE NOT IMMUNE FROM THE CLAIMS FOR NEGLIGENCE AND AIDING AND ABETTING FRAUD

The Supreme Court has held that "[p]reemption of state law by federal statute or regulation is not favored in the absence of persuasive reasons — either that the nature of the regulated subject matter permits no other conclusion, or that Congress has unmistakably so ordained." *Chicago N.W. Transp. Co. v. Kalo Brick Tile Co.*, 450 U.S. 311, 317, 101 S.Ct. 1124, 1130, 67 L.Ed.2d 258 (1981) (citation and internal quotation mark omitted). "The establishment of a wide-ranging scheme of federal regulation, however, does not result in the abolition of common law rights unless Congress plainly intended to abolish them or unless their continued existence would render the regulatory scheme ineffective." *See Nader v. Allegheny Airlines, Inc.*, 426 U.S. 290, 298-300, 96 S.Ct. 1978, 1984-1985, 48 L.Ed.2d 643 (1975). The Supreme Court has indicated that a state law can be preempted in two ways. Congress may intend to occupy a given field or the state law may conflict with federal law. *See Silkwood v. Kerr-McGee Corp.*, 464 U.S. 238, 104 S.Ct. 615, 621, 78 L.Ed.2d 443 (1984). "Federal regulation of a field of commerce should not be deemed preemptive of a state regulatory power unless either the nature of the regulation permits no other conclusion or Congress has made its intent to preempt

13

state regulation unmistakably clear." *Florida Lime and Avocado Growers, Inc. v. Paul*, 373 U.S. 132, 142, 83 S.Ct. 1210, 1217, 10 L.Ed.2d 248 (1963).

While Congress granted the CFTC exclusive jurisdiction, it also provided a savings clause, which provided, "Nothing in this section shall supersede or limit the jurisdiction conferred on courts of the United States or any State." 7 U.S.C. § 2. This led to the conclusion that state common law claims are not preempted by the CEA. *See, e.g., Patry v. Rosenthal Co.*, 534 F. Supp. 545, 551 (D.Kan. 1982)

To continue, the New York State Appellate Division stated that "[w]e agree with the overwhelming body of case law which holds that, while establishing a wide-ranging scheme for the regulation of commodities trading, nothing in the Act preempts or abolishes traditional common law claims for damages." *Ghandour v. Shearson Lehman Hutton, Inc.*, 174 A.D.2d 317 (N.Y. App. Div. 1991).

Numerous courts have come to the same result. *See Kerr v. First Commodity Corp. of Boston*, 735 F.2d 281, 288 (8th Cir. 1984) (the continued existence of common law fraud actions does not conflict with regulatory scheme established by the Act); *Kotz v. Bache Halsey Stuart, Inc.*, 685 F.2d 1204, 1207-08 (9th Cir. 1982) (retention of common law fraud actions is in no way inconsistent with the scheme for regulation established in the 1974 Act); *United States v. Brien*, 617 F.2d 299, 310 (1st Cir.), cert. denied, 446 U.S. 919, 100 S.Ct. 1854, 64 L.Ed.2d 273 (1980) ("While courts have held that the CFTA preempts state regulation of commodity

14

futures, . . . it has also been held that the CFTA does not preempt state general antifraud statutes."); *See also Khalid Bin Talal Bin Abdul Azaiz Al Seoud v. E.F. Hutton Co.*, 720 F. Supp. 671, 679 (N.D. Ill. 1989); *W W Farms, Inc. v. Chartered Systems, Etc.* (N.D.Ind. 1982), 542 F. Supp. 56, 60 (N.D. Ind. 1982); *Witzel v. Chartered Systems Corp. of New York, Ltd.*, 490 F. Supp. 343, 347-48 (D.Minn. 1980).

Accordingly, state common law claims are not preempted by the CEA, at least not entirely. *See American Agriculture Movement v. Bd. of Trade*, 977 F.2d 1147, 1155 (7th Cir. 1992) (concluding that existence of preemption savings clause indicates that Congress did not intend to preempt the field and that the existence of both a preemption provision and a savings clause evidences a legislative intent to preempt some, but not all, state regulation). The Seventh Circuit stated that "the structure and history of the CEA indicate that the propriety of conflict preemption depends upon the particular context in which a plaintiff seeks to bring a state law action. When application of state law would directly affect trading on or the operation of a futures market, it would stand as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress, and hence is preempted. When, in contrast, the application of state law would affect only the relationship between brokers and investors or other individuals involved in the

15

market, preemption is not mandated." *Id.* at 1156 (citation and internal quotation marks omitted).

This Circuit has held that 7 U.S.C. § 2 preempts state regulation of commodities markets, but does not preempt all state common law remedies. *Strobl v. New York Mercantile Exch.*, 561 F. Supp. 379, 385 (S.D.N.Y. 1983). "We have found nothing in the legislative history indicating Congressional concern that state statutes prohibiting fraud in commodity transactions … would hinder uniform application of the CEA." *Bishop v. Commodity Exchange, Inc.*, 564 F. Supp. 1557, 1563 (S.D.N.Y. 1983).

In the underlying case, the negligence claim is not preempted by CEA. First, the negligence claim against CME has "little or no bearing upon the actual operation of the commodity futures markets." *American Agriculture Movement,* 977 F.2d at 1156. Appellants-Plaintiffs allege, *inter alia*, CME willfully neglected BOC Group's unlawful acts. CME implemented the Anti-Money Laundering (AML)/Know Your Customer (KYC) programs for the purposes of verifying the customers identity and applying enhanced due diligence to accounts involving foreign person. (AA E31, ¶ 58). CME should but failed to detect, deter and prevent Defendants BOC and BOCI USA's fraudulent acts, including its concealment of the true identity of the COT customers and shell accounts for the COT oil futures contracts. (AA E31, ¶ 58). For the purposes of raking in a great deal of fees, CME facilitated, aided and abetted, or

willfully neglected Defendants BOC and BOCI USA's unlawful scheme by permitting the illicit trading of WTI futures contracts on the NYMEX, also by ignoring Defendant BOC Group's scheme in hiding the identity of the true owners of the COT WTI futures contracts and the use of shell accounts. (AA E31, ¶ 59). Those alleged conducts have no effect on the actual operation of the commodity futures markets because with or without the BOC Group's unlawful acts, the commodity futures market will operate as usual. The allegations against BOC Groups are not sort of impacting the market, e.g., price manipulation. As such, CME's willful neglect of BOC Group's unlawful conducts has no bearing on the operation of the commodity futures markets.

Additionally, the claim for negligence should stand because Appellants-Plaintiffs alleges CME's bad faith. In general, "bad faith" means "ulterior motive". *See P.J. Taggares Co. v. New York Mercantile Exchange*, 476 F. Supp. 72, 77 n. 22 (S.D.N.Y. 1979). "[W]hen self-interest or other ulterior motive unrelated to proper regulatory concerns is alleged to constitute the sole or the dominant reason for the exchange action, a complaint is sufficient even though the action was not beyond the bounds of reason." *Sam Wong & Son, Inc. v. New York Mercantile Exch.*, 735 F.2d 653, 677 (2d Cir. 1984); *See DGM Inv., Inc. v. New York Futures Exch., Inc.*, 265 F.Supp.2d 254, 261 (S.D.N.Y. 2003) (citing to Sam Wong and finding that Appellants-Plaintiffs were entitled to discovery to substantiate their claims since

Appellants-Plaintiffs had alleged financial interests motivated Appellees-Defendants and along with other actions made "it likely that more than mere negligence and inattention took place."); *See Minpeco, S.A. v. Hunt,* 693 F.Supp. 58, 61 (S.D.N.Y. 1988) ("self-interest or other ulterior motive unrelated to proper regulatory concerns must constitute the sole or dominant reason for the exchange action or inaction."). In *Strobl*, the District Court upheld the negligence claim against NYMEX for "negligently failed to maintain an orderly market for trading of April and May 1976 Maine potato futures contracts" after finding the allegation of bad faith. *Strobl*, 561 F. Supp. at 382, 386.

Similarly in the underlying case, Appellants-Plaintiffs clearly allege bad faith. CME has the ulterior motive for self-interest, i.e., "raking in a great deal of fees" and "has done nothing while enjoying the fees rolling in." (AA E31-32, ¶¶ 59, 62).

Accordingly, Appellants-Plaintiffs' claim for CME's negligence should not be dismissed. For the same reasons, CME is not immune from the claim for aiding abetting fraud because that has little or no connection with the regulatory responsibilities delegated to CME and because as alleged, self-interest is the dominant reason.

## III. APPELLANTS-PLAINTIFFS' REQUEST TO AMEND SHOULD BE GRANTED

Further to dismissing the claims against Appellees-Defendants, the District Court denied Appellants-Plaintiffs' request for leave to amend the Complaint

pursuant to Rule 15 as stated in Appellants-Plaintiffs' opposition to BOC USA's motions to dismiss. (AA F).

This Court reviews the district court's denial of leave to amend a pleading for abuse of discretion. *Krys*, at 134. Here, Appellants-Plaintiffs contend that the District Court's denial was made upon "a clearly erroneous assessment of the facts" *Anderson News, L.L.C.*, at 185.

The court should freely give leave to amend when justice so requires. *See* F.R.C.P. 15(a)(2). Leave to amend may properly be denied if the amendment would be futile, *see, e.g., AEP Energy Services Gas Holding Co. v. Bank of America, N.A.*,626 F.3d 699, 726 (2d Cir.2010). As discussed above, Appellants-Plaintiffs will be able to substantively revise the original pleadings with more specifics if required.

The District Court stated that there was no indication of how amending would cure the Complaint's numerous deficiencies. This determination was premature because Appellants-Plaintiffs had not opportunity to present the amended pleadings for the District Court's review. Since Appellants-Plaintiffs would not know the deficiencies before the District Court's opinion, Appellants-Plaintiffs could only make a general request to amend. Moreover, the District Court seemed to summarily deny Appellants-Plaintiffs' request entirely because two non-exhaustive amendment

proposals in the context of specific claims for breach of contract and breach of fiduciary duty were found to be futile. (AA B12-14, F68).

As for amendment of claims against CME, the District Court reiterated "absolute immunity" and denied the request without discussing any pleading deficiencies. (AA B10-11).

## CONCLUSION

Based on the foregoing, Appellants-Plaintiffs respectfully request that this Court reverse the District Court's decision.

Dated: July 15, 2024                    Respectfully submitted,


                                        By: _____*/s/ John Y. Tang*_____
                                                John Y. Tang

                                        John Y. Tang (N.Y. SBN: 4728580)
                                        **Tang PC**
                                        1702 Flushing Ave
                                        Ridgewood, NY 11385
                                        Telephone: (212) 363-0188
                                        Facsimile: (212) 981-4869
                                        john.tang@gettang.com


                                        Wenjie Cai (N.Y. SBN: 5867569)
                                        **Tang PC**
                                        1702 Flushing Ave
                                        Ridgewood, NY 11385
                                        Telephone: (212) 363-0188

20

Facsimile: (212) 981-4869
ericat@gettang.com

*Counsel for the Appellants-Plaintiffs*

21

## CERTIFICATE OF COMPLIANCE

This document complies with the word limit of FRAP 27(d)(2)(A) because, excluding the parts of the document exempted by FRAP 32(f) and, this document contains 4,367 words.

This document complies with the typeface requirements of FRAP 32(a)(5) and the type-style requirements of FRAP 32(a)(6). This document has been prepared in a proportionally spaced typeface using Microsoft Word in Times Roman 14-point font.

Dated: July 15, 2024                    Respectfully submitted,


By: _/s/ John Y. Tang_____
       John Y. Tang

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that, on this 15th day of July, 2024, a true and correct copy of the foregoing Plaintiffs-Appellants' Brief and all accompanying documents have been electronically filed with the Court; is available for download and viewing using ACMS; and was served via same on all counsel of record.


Dated: July 15, 2024                                Respectfully submitted,


                                         By:_____ */s/ John Y. Tang*_____
                                                  John Y. Tang