# 24-1426

IN THE

# United States Court of Appeals

## FOR THE SECOND CIRCUIT

◆◆

S.G., M.G., on behalf of themselves and others similarly situated,

*Plaintiffs-Appellants,*

—against—

BANK OF CHINA U.S.A., BOC INTERNATIONAL HOLDINGS LTD,
BOCI COMMODITIES & FUTURES (USA) LLC, CME GROUP INC.,
NEW YORK MERCANTILE EXCHANGE, INC.,

*Defendants-Appellees,*

BANK OF CHINA LTD.,

*Defendant.*

———

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

## BRIEF FOR DEFENDANTS-APPELLEES CME GROUP INC.
## AND NEW YORK MERCANTILE EXCHANGE, INC.

SHARI A. BRANDT
MATTHEW M. RICCARDI
PERKINS COIE LLP
1155 Avenue of the Americas,
    22nd Floor
New York, New York 10036
(212) 262 6900

*Attorneys for Defendants-Appellees
    CME Group Inc. and New York
    Mercantile Exchange, Inc.*

## CORPORATE DISCLOSURE STATEMENT

Pursuant to Rule 26.1 of the Federal Rules of Appellate Procedure, the undersigned Defendants-Appellees make the following disclosures:

CME Group Inc. has no parent corporation, and no publicly owned company owns 10% or more of its stock.

New York Mercantile Exchange, Inc. is wholly owned by CME Group Inc.

# TABLE OF CONTENTS

**Page**

INTRODUCTION ........................................................................ 1

COUNTER STATEMENT OF THE ISSUES ......................................... 3

STATEMENT OF THE CASE ......................................................... 4

    A.    Plaintiffs' Allegations Concerning Defendant BOC Group's COT Product ............................................. 4

    B.    Plaintiffs' Allegations Against The CME Defendants ........... 8

    C.    This Action .................................................... 9

SUMMARY OF ARGUMENT ........................................................12

ARGUMENT ...........................................................................14

I.    Plaintiffs Have Waived Any Challenge To The District Court's Holding That The CME Defendants Are Immune From Plaintiffs' Claims, Which, In Any Event, Was Correct .................14

    A.    Plaintiffs Have Waived Any Appeal Of The District Court's Immunity Decision ....................................15

    B.    The CME Defendants Are Absolutely Immune Because Plaintiffs' Claims Concern Their Regulatory Responsibilities As SROs ......................................17

    C.    Plaintiffs' Allegations Of "Bad Faith" Do Not Save Their Claims .....................................................18

II.    Plaintiffs' Claims Are Preempted .................................21

III.    Plaintiffs Failed To Plead The Elements Of Their Claims............24

    A.    Negligence...................................................24

B.     Aiding And Abetting .............................................26

IV.   The Dismissal Of The Claims Against CMEG Should Also Be Affirmed On Improper Group Pleading Grounds .........................29

V.    Leave To Amend Was Properly Denied .........................................29

CONCLUSION.................................................................31

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Aiken v. Interglobal Mergers & Acquisitions*,
  No. 05-cv-5503, 2006 WL 1878323 (S.D.N.Y. July 5, 2006) .............. 25

*Am. Agric. Movement, Inc. v. Bd. of Trade of City of Chicago*,
  977 F.2d 1147 (7th Cir. 1992) ...................................... 21, 22

*Brawer v. Options Clearing Corp.*,
  807 F.2d 297 (2d Cir. 1986) ............................................ 20

*Burlington Ins. Co. v. NYC Transit Auth.*,
  29 N.Y.3d 313 (2017) ................................................... 26

*City of Providence v. Bats Glob. Mkts, Inc.*,
  878 F.3d 36 (2d Cir. 2017) ............................................. 18

*D'Alessio v. NYSE, Inc.*,
  258 F.3d 93 (2d Cir. 2001) ............................................. 17

*Dexter v. Depository Tr. & Clearing Corp.*,
  406 F. Supp. 2d 260 (S.D.N.Y. 2005), *aff'd* No. 06-0123,
  2007 WL 689542 (2d Cir. Mar. 6, 2007) ................................. 19

*DGM Invs., Inc. v. N.Y. Futures Exch.*,
  No. 01-cv-11602, 2002 WL 31356362 (S.D.N.Y.
  Oct. 17, 2002) .................................................. 21, 23, 24

*Effex Cap., LLC v. Nat'l Futures Ass'n*,
  933 F.3d 882 (7th Cir. 2019) ........................................... 22

*Gross v. Rell*,
  585 F.3d 72 (2d Cir. 2009) ............................................. 16

*Hatcher v. CVS Corp.*,
  358 F. App'x 270 (2d Cir. 2009) ........................................ 15

iv

*In re Chicago Bd. Options Exch. Volatility Index*
  *Manipulation Antitrust Litig.*,
  390 F. Supp. 3d 916 (N.D. Ill. 2019), *aff'd sub nom. Barry*
  *v. Cboe Glob. Markets, Inc.*, 42 F.4th 619 (7th Cir. 2022)..................22

*In re Facebook, Inc., IPO Sec. & Derivative Litig.*,
  986 F. Supp. 2d 428 (S.D.N.Y. 2013)...................................19

*In re NYSE Specialists Sec. Litig.*,
  503 F.3d 89 (2d Cir. 2007) .........................................17, 19

*Krys v. Pigott*,
  749 F.3d 117 (2d Cir. 2014) ..........................................27

*Mazella v. Beals*,
  27 N.Y.3d 694 (2016) ................................................26

*Meyer v. Seidel*,
  89 F.4th 117 (2d Cir. 2023) ..........................................15

*Minpeco, S.A. v. Hunt*,
  693 F. Supp. 58 (S.D.N.Y. 1988).....................................20

*New York State Elec. & Gas Corp. v. FirstEnergy Corp.*,
  766 F.3d 212 (2d Cir. 2014) ..........................................29

*P.J. Taggares Co. v. N.Y. Mercantile Exch.*,
  476 F. Supp. 72 (S.D.N.Y. 1979).....................................20

*Rivera v. JP Morgan Chase*,
  815 F. App'x 603 (2d Cir. 2020).....................................15

*Standard Inv. Chartered, Inc. v. Nat'l Ass'n of Sec. Dealers, Inc.*,
  637 F.3d 112 (2d Cir. 2011) ..........................................17

*Stanfield Offshore Leveraged Assets, Ltd. v. Metro. Life Ins. Co.*,
  64 A.D.3d 472 (1st Dep't 2009)......................................27

*Strobl v. N.Y. Mercantile Exch.*,
  561 F. Supp. 379 (S.D.N.Y. 1983)..................................20, 21

*Sutton ex rel. Rose v. Wachovia Sec., LLC*,
  208 F. App'x 27 (2d Cir. 2006) ............................................................. 15

*Troyer v. Nat'l Futures Ass'n*,
  No. 16-cv-00146, 2017 WL 2971962 (N.D. Ind. Jul. 12,
  2017) ......................................................................................................... 23

*Vaccariello v. Fin. Partners Brokerage, Ltd.*,
  No. 82 C 5910, 1983 WL 1367 (N.D. Ill. July 29, 1983) ..................... 23

*Vitanza v. Bd. of Trade of City of N.Y.*,
  No. 00-cv-7393, 2002 WL 424699 (S.D.N.Y. Mar. 18, 2002) ........ 19, 20

*W. Cap. Design, LLC v. N.Y. Mercantile Exch.*,
  180 F. Supp. 2d 438 (S.D.N.Y. 2001), *aff'd*, 25 F. App'x 63
  (2d Cir. 2002) ..................................................................................... 20, 23

*Zamora v. FIT Int'l Group Corp.*,
  834 F. App'x 622 (2d. Cir. 2020) ........................................................... 27

**STATUTES**

31 U.S.C. § 5312(c)(1)(A) ............................................................................ 25

Bank Secrecy Act ................................................................... 8, 25, 26, 28

Commodity Exchange Act ............................................................... passim

Patriot Act .................................................................................................. 25

**RULES**

Fed. R. App. P. 28(a) ................................................................................. 16

Fed. R. Civ. P. 8 ....................................................................... 10, 11, 14, 29

Fed. R. Civ. P. 9(b) ........................................................................... passim

Rule 2-30 (Customer Information and Risk Disclosure),
  *National Futures Association Rulebook* .............................................. 25

vi

## INTRODUCTION

Plaintiffs would like to find someone to blame for their investment losses in the Crude Oil Treasure ("COT") financial derivative product issued by the Bank of China Ltd., but the CME Group Inc. ("CMEG") and its wholly owned subsidiary the New York Mercantile Exchange, Inc. ("NYMEX"; together the "CME Defendants") have no connection to Plaintiffs or any of the alleged misconduct. The COT does not trade on NYMEX nor were Plaintiffs customers of NYMEX. The District Court correctly dismissed Plaintiffs' claims against the CME Defendants on grounds that they have absolute immunity because Plaintiffs' allegations concern the CME Defendants' regulatory responsibilities as self-regulatory organizations ("SROs"). But the dismissal can also be affirmed on several alternative grounds. There is no plausible scenario in which the CME Defendants should remain in this litigation.

Plaintiffs appeal the District Court's decision but have not pointed to any errors in the Court's opinion below nor have they cited to any additional case law. Instead, the portion of the Plaintiffs-Appellants' Brief directed toward the CME Defendants consists solely of a nearly verbatim repetition of Plaintiffs' motion to dismiss briefing on the issue

of Commodity Exchange Act ("CEA") preemption. By failing to challenge substantively the Court's ruling on the issue of immunity, Plaintiffs have waived their right to challenge the decision on this appeal.

The dismissal of the CME Defendants with prejudice should also be affirmed on the merits for the reasons set forth by the Court. Plaintiffs, who seek to represent a class of retail investors primarily in China, allege they suffered investment losses in the COT financial derivative product that derived its value from West Texas Intermediate crude oil ("WTI") futures contracts that trade on NYMEX. The COT financial derivative product does not trade on NYMEX. It was created and marketed by Bank of China Ltd. with allegedly false promises that it was low risk and "can always make you money." Plaintiffs allege that Bank of China Ltd., in collusion with the other defendant affiliates of Bank of China Ltd., mismanaged Plaintiffs' COT investments and made it nearly impossible for Plaintiffs to prevent losses when there was volatility in the underlying WTI futures contracts.

Plaintiffs' two claims against the CME Defendants—Count 7 for negligence and Count 8 for aiding and abetting the alleged common law fraud by Bank of China Ltd. and its affiliated defendants—are based on

allegations that the CME Defendants failed to properly discharge their regulatory responsibilities and therefore failed to protect Plaintiffs from their investment losses in the COT product when the underlying WTI futures contracts entered a period of volatility on NYMEX. But, as SROs, the CME Defendants are absolutely immune from such claims. On that basis, the District Court dismissed Plaintiffs' action, and that dismissal should be affirmed.

This Court can also choose to affirm the decision dismissing the CME Defendants on the alternative ground of preemption, as well as on the arguments also briefed below that Plaintiffs have not stated a claim, have failed to plead with the particularity required by Rule 9(b), and have engaged in impermissible group pleading by lumping CMEG and NYMEX together.

## COUNTER STATEMENT OF THE ISSUES

1.    Whether Plaintiffs have waived appeal of the District Court's decision regarding the CME Defendants' immunity by failing to address it substantively in their opening brief.

2.    Whether, if the Court chooses to forgive Plaintiffs' waiver, the District Court correctly held that the CME Defendants, as self-regulatory

organizations, are immune from Plaintiffs' claims because they concern the CME Defendants' core regulatory functions.

3.    Whether, if the Court addresses and reverses the District Court's ruling that the CME Defendants are immune, the District Court's judgment should be affirmed on alternative grounds that were briefed below but not decided by the District Court, that (1) Plaintiffs' claims against the CME Defendants are preempted, (2) Plaintiffs failed to plead the elements of negligence or aiding and abetting common law fraud, including that Plaintiffs did not satisfy Rule 9(b)'s particularity requirement, and (3) Plaintiffs engaged in impermissible group pleading.

4.    Whether the District Court abused its discretion in denying Plaintiffs' request to amend their complaint against the CME Defendants when Plaintiffs failed to identify any new allegations that would overcome the CME Defendants' immunity or the alternative grounds for affirming the District Court's judgment.

## STATEMENT OF THE CASE

### A.    Plaintiffs' Allegations Concerning Defendant BOC Group's COT Product

The central theory of Plaintiffs' Complaint is that Bank of China Ltd. and its affiliated defendants (which Plaintiffs group plead against

as "Defendant BOC Group") fraudulently marketed the COT, mismanaged whatever exposure the COT had to WTI futures contracts, and breached contractual obligations to Plaintiffs and other COT investors.[1]

As alleged by Plaintiffs, the COT was developed by Defendant BOC Group as an "extremely risky derivative investment product encapsulating the West Texas Intermediate ('WTI') light sweet crude oil futures contracts traded on the NYMEX." Plaintiffs-Appellants' Appendix ("PAA") 18 (Compl. ¶ 1). Nevertheless, Defendant BOC Group allegedly marketed the COT as a "wealth management product" in violation of applicable Chinese law so that they could sell it to "inexperience[d] investors with little knowledge of investment products and the risks." PAA 24 (Compl. ¶ 33). The marketing for the COT by Defendant BOC Group included, among other things, promises that "Crude Oil Treasure can always make you money" and that "Crude Oil Treasure is not leveraged, and the risk is not particularly high." PAA 25 (Compl. ¶ 35).

---

[1] Plaintiffs had served the Complaint on all defendants except Bank of China Ltd. by the time the District Court issued its decision.

5

Investors such as Plaintiffs bought the COT pursuant to an agreement with Defendant Bank of China Ltd. (the "COT Agreement"). PAA 25 (Compl. ¶ 36). The COT Agreement required investors to pay a "100% security deposit" for their COT investments. PAA 25 (Compl. ¶ 38). In the COT Agreement, Bank of China Ltd. stated that it would "continuously monitor[] each COT account"; "notify the customers . . . in the event that the net security deposit of the account falls below 50% of the value of the initial position"; and, importantly, "automatically liquidate the COT account in the event the net security deposit drops below 20% of the value of the initial position." PAA 25-26 (Compl. ¶ 40). Bank of China Ltd. allegedly failed to comply with these obligations in April 2020 when it rolled over the underlying May 2020 WTI futures contract on the settlement date, April 20, 2020, at a price of -$37.63 a barrel. PAA 26, 31-32 (Compl. ¶¶ 40, 62). For Plaintiffs, whose exposure to the WTI was solely through the COT they had purchased from Defendant BOC Group, the -$37.63 settlement price meant not only that they lost their entire investment (because Defendant BOC Group had required them to post 100% security for their original COT investment), but also that they had to pay Defendant BOC Group the additional $37.63

that Defendant BOC Group was ostensibly required to pay to rollover each May 2020 WTI futures contract.  PAA 29-30 (Compl. ¶¶ 53-54).

Plaintiffs claim several actions by Defendant BOC Group directly caused or exacerbated their alleged losses:

• Defendant BOC Group chose a "bizarrely wrong rollover day," PAA 27 (Compl. ¶ 44), which meant Defendant BOC Group rolled over the May 2020 WTI futures contract at the lowest possible price: -$37.63, causing Plaintiffs' greater losses, PAA 29-30 (Compl. ¶¶ 53-54).

• Defendant BOC Group did not "automatically liquidate[] the COT accounts" when the WTI futures contract price declined below levels set out in the COT Agreement, PAA 26, 27 (Compl. ¶¶ 40, 45), or set forth in "CME rules," PAA 30 (Compl. ¶ 55).  Similarly, Defendant BOC Group did not warn Plaintiffs that the prices had dropped to such levels.  PAA 27 (Compl. ¶ 45).

• Defendant BOC Group "recklessly and arbitrarily restricted the trading time for COT customers" to hours that made it difficult or impossible for COT investors to trade COT when WTI futures contracts traded on NYMEX.  PAA 28-29 (Compl. ¶ 48).

7

• Defendant BOC Group did not advise Plaintiffs that prices for WTI futures contracts could be negative, following an announcement to the market to that effect by "Defendant CME," PAA 29 (Compl. ¶¶ 49-51), and told COT customers that "[they] would not face any potential loss caused by rollover" and "that the COT was without risk," PAA 29 (Compl. ¶ 52).

Plaintiffs have not alleged that any of this misconduct involved the CME Defendants.

## B.    Plaintiffs' Allegations Against The CME Defendants

The only alleged "wrongdoings" by the CME Defendants entirely concern alleged failures to comply with applicable rules or regulations that implicate their role as SROs.  Specifically, Plaintiffs allege that the CME Defendants:

• "should [have] but failed to detect, deter and prevent Defendant BOC Group's fraudulent acts, including its concealment of the true identity of the COT customers and shell accounts for the COT oil futures contracts" in violation of the Bank Secrecy Act and "related regulations," PAA 31 (Compl. ¶ 58);

8

- "failed to force liquidate the COT accounts . . . pursuant to the published rules," PAA 31 (Compl. ¶ 61);

- failed "to prevent market disruption" by "fail[ing] to exercise diligence to intervene or trigger circuit break under the trading rule or on its discretion to halt the unusually volatile trading" of the May 2020 WTI futures contracts in violation of the CEA and "related CFTC regulations," PAA 31-32 (Compl. ¶ 62); and

- were wrong to "announce[] the new policy that allows the negative prices for certain energy futures contracts . . . without thorough study and research on the negative price's impact on the market," PAA 31 (Compl. ¶ 60).

Each of these allegations plainly goes to the CME Defendants' core regulatory functions as SROs.

## C. This Action

All defendants who were served moved to dismiss. The CME Defendants argued that the claims against them should be dismissed on the grounds that (i) they are absolutely immune as SROs from Plaintiffs' claims, (ii) Plaintiffs' claims are preempted by the CEA, (3) Plaintiffs failed to state a claim, failed to plead with sufficient particularity under

Rule 9(b), and did not make allegations specific to either of the CME Defendants to satisfy Rule 8, and (4) finally, as to CMEG, Plaintiffs did not allege facts that supported piercing the corporate veil.

Plaintiffs, relying on outdated and inapposite caselaw, argued incorrectly that the CME Defendants were not immune and that their claims were not preempted by the CEA because the Complaint purported to allege that the CME Defendants had acted in bad faith with the purpose of "raking in a great deal of fees" and did "nothing while enjoying the fees rolling in."

Regarding their negligence claim, Plaintiffs failed to explain how the CME Defendants owed a duty to Bank of China Ltd.'s retail customers whose exposure to WTI futures contract was through the COT derivative product they bought and managed through a Bank of China-provided app. Similarly, Plaintiffs failed to explain how any of the alleged acts or failures by the CME Defendants were the proximate cause of Plaintiffs' losses.

Regarding their aiding and abetting common law fraud claim, Plaintiffs could not explain either how the CME Defendants would have had actual knowledge of Defendant BOC Group's fraud or how the CME

Defendants provided substantial assistance.[2]  Critically, Plaintiffs could not point to allegations in the Complaint that would constitute the elements of the underlying fraud, let alone with the particularity required by Rule 9(b).

The District Court dismissed the Complaint in its entirety.  With respect to the CME Defendants, the Court held that they were absolutely immune from Plaintiffs' claims because "each of the complaint's allegations of 'Defendant CME's Wrongdoing[]' springs from activity core to CME's regulatory function."  PAA 10. The Court also found that Plaintiffs' assertion that their claim was not connected to regulatory responsibilities was contradicted by their own allegations in the Complaint.  PAA 11.  And the District Court held that Plaintiffs' allegations of bad faith were insufficiently pled and, in any event, irrelevant to the question of the CME Defendants' immunity.  *Id.*

Lastly, in granting the moving BOC Defendants' motions, the District Court held that the Complaint's group pleading violated Rule 8

---

[2] Plaintiffs clarified during briefing the motion to dismiss below that their aiding and abetting claim against the CME Defendants was for aiding and abetting common law fraud, not for aiding and abetting a CEA violation.

for all claims and Rule 9(b) for the fraud-related claims, including Count 7, the negligence claim against the CME Defendants, and Count 8, the aiding and abetting claim against the CME Defendants. PAA 7-8. The District Court denied Plaintiffs' request for leave to amend as futile. PAA 12-14.

## SUMMARY OF ARGUMENT

As an initial matter, Plaintiffs have waived any argument that the Court's decision for the CME Defendants was erroneous, because Plaintiffs-Appellants' Brief fails to substantively discuss the Court's ruling on immunity, let alone challenge its correctness. The District Court's judgment should also be affirmed on the merits because it is clear that Plaintiffs' claims against the CME Defendants go to the heart of their regulatory responsibilities. Plaintiffs' claims concern how the CME Defendants diligence customer identity, PAA 31 (Compl. ¶ 58), how they manage volatile markets, PAA 31-32 (Compl. ¶ 61-62), and how they communicate decisions about market management to the public, PAA 31 (Compl. ¶ 60). As SROs, the CME Defendants have absolute immunity from such claims, notwithstanding Plaintiffs' conclusory allegations of bad faith.

Alternatively, the District Court's judgment can also be affirmed on other grounds. Plaintiffs' claims are preempted by the CEA—again because they implicate the CME Defendants' core commodity market regulatory functions. And Plaintiffs' allegations do not, in any event, satisfy the elements for claims for negligence or aiding and abetting common law fraud.

The negligence claim fails because the CME Defendants owed no duty to Plaintiffs and their conduct cannot have been the proximate cause of Plaintiffs' losses. Plaintiffs' allegations make clear that their relationship was with, if anyone, Bank of China Ltd. and its affiliates, not the CME Defendants, and that the terms by which Plaintiffs bought and maintained their COT investments through Bank of China Ltd.'s app caused their losses.

The aiding and abetting common law fraud claim fails because Plaintiffs have pled that the allegedly fraudulent scheme was *concealed from* the CME Defendants—thus, they concededly had no actual knowledge—and because Plaintiffs' allegations do not show how the CME Defendants could have provided any assistance, substantial or otherwise, to help the alleged scheme succeed. The claim also fails, as the District

Court held, because Plaintiffs have failed to plead the underlying fraud against Defendant BOC Group with enough particularity under Rule 9(b).

Finally, regardless, CMEG's dismissal is proper for the independent reason that Plaintiffs have engaged in group pleading in violation of Rule 8 and there are no veil piercing allegations.

## ARGUMENT

### I. Plaintiffs Have Waived Any Challenge To The District Court's Holding That The CME Defendants Are Immune From Plaintiffs' Claims, Which, In Any Event, Was Correct

The District Court correctly found that the CME Defendants are immune from Plaintiffs' claims. Plaintiffs' allegations plainly target the CME Defendants' regulatory responsibilities as SROs, for which they are entitled to absolute immunity. Plaintiffs fail to challenge this ruling on appeal, choosing instead to solely address the issue of CEA preemption by copying and pasting their preemption arguments from below. *Compare* App. Br. at 13-18 *with* Pls. Opp'n to Motion to Dismiss at 5-10, Supplemental Appendix for Defendants-Appellees Bank of China U.S.A. and BOCI Commodities & Futures (USA) LLC 111-16. Because Plaintiffs clearly waived any challenge to the principal basis for the District Court's ruling for the CME Defendants, this Court should affirm

14

on that ground alone.  In any event, the District Court correctly held that the CME Defendants are immune.

### A.    Plaintiffs Have Waived Any Appeal Of The District Court's Immunity Decision

Because Plaintiffs make *no* arguments concerning the CME Defendants' immunity, they have waived their appeal of the District Court's immunity holding.  Failure to meaningfully advance an argument on appeal constitutes waiver of that issue.  *Meyer v. Seidel*, 89 F.4th 117, 129 (2d Cir. 2023) ("We see no reason to entertain Meyer's argument" when "at no point in his initial brief on appeal did Meyer challenge the district court's decision to apply New York law"); *Rivera v. JP Morgan Chase*, 815 F. App'x 603, 606 n.1 (2d Cir. 2020) ("Rivera's brief on appeal does not address the district court's dismissal of his SCRA claim or his Title VII claims against the individual defendants, or its decision not to exercise supplemental jurisdiction over his state law claims. Accordingly, his appeal of those claims is waived."); *Hatcher v. CVS Corp.*, 358 F. App'x 270, 271 (2d Cir. 2009) (finding waiver of claims where appellant failed to brief arguments addressing the granting of summary judgment for one of the five claims); *Sutton ex rel. Rose v. Wachovia Sec., LLC*, 208 F. App'x 27, 29 n.1 (2d Cir. 2006) (finding appellant waived argument that district

court erred in dismissing a claim on ground that the circuit has never considered before because they failed to make the argument in their brief).

Instead of addressing immunity, Plaintiffs repeat arguments from the briefing below about CEA preemption. While Plaintiffs perfunctorily mention immunity in the heading and the last sentence of Section II of their opening brief's argument (and they correctly note in their Statement of the Case that the District Court dismissed the CME Defendants because they are immune as SROs), that is not enough. Failing to address an issue in an opening brief constitutes waiver. "Merely mentioning the relevant issue in an opening brief is not enough" because "simply stating an issue does not constitute compliance with FRAP 28(a)." *Gross v. Rell*, 585 F.3d 72, 95 (2d Cir. 2009). Appellants "must state the issue and *advance an argument*." *Id.* (internal quotations and citations omitted) (emphasis added). Plaintiffs have not done so. The Court can affirm on this basis alone.

**B.    The CME Defendants Are Absolutely Immune Because Plaintiffs' Claims Concern Their Regulatory Responsibilities As SROs**

"There is no question that an SRO and its officers are entitled to absolute immunity from private damages suits in connection with the discharge of their regulatory responsibilities.  This immunity extends both to affirmative acts as well as to an SRO's omissions or failure to act." *Standard Inv. Chartered, Inc. v. Nat'l Ass'n of Sec. Dealers, Inc.*, 637 F.3d 112, 115 (2d Cir. 2011) (internal citations omitted).  "[T]he central question our SRO-immunity cases ask is not whether the SRO is acting (or not acting) 'consistent with' the laws it is supposed to apply but rather whether the plaintiff's allegations concern the exercise of powers within the bounds of the government functions delegated to it."  *In re NYSE Specialists Sec. Litig.*, 503 F.3d 89, 98 (2d Cir. 2007).  "[S]o long as the 'alleged misconduct falls within the scope of the quasigovernmental powers delegated to the [SRO],' absolute immunity attaches."  *Id.* at 96 (quoting *D'Alessio v. NYSE, Inc.*, 258 F.3d 93, 106 (2d Cir. 2001)).

Plaintiffs' allegations in support of their claims unquestionably implicate the CME Defendants' core regulatory duties.  Plaintiffs allege that the CME Defendants failed in their oversight of trading by

17

Defendant BOC Group, failed to properly consider the implications of allowing WTI futures contract to trade at negative prices, and failed to prevent an alleged market disruption in the trading of WTI futures contracts by halting trading or using a circuit breaker. PAA 31-32 (Compl. ¶¶ 60-62). These are precisely some of the situations where this Court has already found that absolute immunity for SROs applies. The non-exclusive list of examples includes "the enforcement of security-related rules and regulations and general regulatory oversight over exchange members . . . the interpretation of the securities laws and regulations as applied to the exchange or its members . . . [and] the public announcement of an SRO's cancellation of trades." *City of Providence v. Bats Glob. Mkts, Inc.*, 878 F.3d 36, 46-47 (2d Cir. 2017). There is no reason to go further. The District Court's decision should be affirmed.

## C. Plaintiffs' Allegations Of "Bad Faith" Do Not Save Their Claims

The District Court properly concluded that Plaintiffs' bad faith allegations that the CME Defendants were motivated to earn a profit were irrelevant to the question of whether the CME Defendants have absolute immunity from Plaintiffs' claims. PAA 11. "[I]mmunity depends only on whether specific acts and forbearances were incident to

18

the exercise of regulatory power, and not on the propriety of those actions or inactions." *NYSE Specialists*, 503 F.3d at 98; *see also In re Facebook, Inc., IPO Sec. & Derivative Litig.*, 986 F. Supp. 2d 428, 448 (S.D.N.Y. 2013) ("In assessing the applicability of absolute immunity to a given claim, the SRO's motive and reasonableness are not considered."); *Dexter v. Depository Tr. & Clearing Corp.*, 406 F. Supp. 2d 260, 263-64 (S.D.N.Y. 2005), *aff'd* No. 06-0123, 2007 WL 689542 (2d Cir. Mar. 6, 2007) ("however badly motivated, inept, or even unlawful the [SROs'] actions may have been, it is absolutely immune from suit . . . based on its exercise of its regulatory functions"). SROs do not "lose their immunity because, in addition to their regulatory functions, they also are profit-making and profit-seeking enterprises." *Dexter*, 406 F. Supp. 2d at 263.

Even if bad faith were relevant, Plaintiffs' conclusory allegations—that the CME Defendants "rak[ed] in a great deal of fees" and did "nothing while enjoying the fees rolling in," App. Br. at 18—are insufficient. To plead bad faith, Plaintiffs must allege "wrongful knowledge, and failure to act on that knowledge with a motive ascribable to malfeasance." *Vitanza v. Bd. of Trade of City of N.Y.*, No. 00-cv-7393, 2002 WL 424699, at *7 (S.D.N.Y. Mar. 18, 2002) (internal quotation and

citation omitted). They must also allege that self-interest or other ulterior motives unrelated to proper regulatory concerns must be the sole or dominant reason for the exchange's actions or inactions. *Minpeco, S.A. v. Hunt*, 693 F. Supp. 58, 61 (S.D.N.Y. 1988). And bad faith must be alleged with particularity in accordance with Rule 9(b). *P.J. Taggares Co. v. N.Y. Mercantile Exch.*, 476 F. Supp. 72, 76-77 (S.D.N.Y. 1979).

Mere allegations, such as Plaintiffs', that an exchange acted to "generate increased trading volumes and revenue" cannot support a claim of bad faith. *Brawer v. Options Clearing Corp.*, 807 F.2d 297, 303 (2d Cir. 1986); *see also Vitanza*, 2002 WL 424699, at *7; *W. Cap. Design, LLC v. N.Y. Mercantile Exch.*, 180 F. Supp. 2d 438, 442 (S.D.N.Y. 2001), *aff'd*, 25 F. App'x 63 (2d Cir. 2002) (rejecting allegations that "unnamed officers or directors of NYMEX" failed to act "due to a bad-faith desire to profit"). Otherwise, a bad faith requirement would have no teeth, as a plaintiff could always satisfy it by alleging generally that the SRO, a for-profit entity, was seeking to make money. Plaintiffs' citation of *Strobl v. N.Y. Mercantile Exchange* does not help. App. Br. at 18. *Strobl* concerns preemption, not immunity, and the allegations of bad faith there had

20

nothing to do with whether NYMEX's actions were to increase revenue. 561 F. Supp. 379, 386 (S.D.N.Y. 1983).

Absolute immunity bars Plaintiffs' claims. The judgment below should be affirmed.

## II. Plaintiffs' Claims Are Preempted

The Court can also affirm on separate grounds that Plaintiffs' claims against the CME Defendants are preempted by the CEA. "When application of state law would directly affect trading on or the operation of a futures market, it would stand 'as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress,' [in enacting the CEA] and hence is preempted." *DGM Invs., Inc. v. N.Y. Futures Exch.*, No. 01-cv-11602, 2002 WL 31356362, at *5 (S.D.N.Y. Oct. 17, 2002) (quoting *Am. Agric. Movement, Inc. v. Bd. of Trade of City of Chicago*, 977 F.2d 1147, 1155-56 (7th Cir. 1992)).

Plaintiffs' allegations are inextricably intertwined with the regulations that apply to "trading on or the operation of a futures market." *Id.* The allegations consist of claims that the CME Defendants (1) "hastily allow[ed] the negative oil price without due diligence," PAA 39 (Compl. ¶ 118), (2) failed to "prevent[] the market disruption" by

21

"willfully neglecting Defendant BOC Group's unlawful acts," *id.,* and (3) failed "to detect, deter and prevent Defendant BOC Group's . . . concealment of the true identity of the COT customers and shell accounts for the COT oil futures contracts," PAA 31 (Compl. ¶ 58). Plaintiffs further allege that these actions by the CME Defendants violated rules or regulations applicable to NYMEX. PAA 31-32 (Compl. ¶¶ 58, 60-62). These allegations all relate to the regulation of the WTI futures market traded on NYMEX.

Claims of negligence and fraud based on allegations like Plaintiffs' are preempted by the CEA. *See Effex Cap., LLC v. Nat'l Futures Ass'n*, 933 F.3d 882, 896 (7th Cir. 2019) (affirming dismissal of defamation, state common law tort, and state statutory claims on preemption grounds); *Am. Agric.*, 977 F.2d at 1156 (preemption of negligence claim arising from exchange's response to a distortion in the soybean futures contract markets because the claim "would directly affect trading on or the operation of a futures market"); *In re Chicago Bd. Options Exch. Volatility Index Manipulation Antitrust Litig.*, 390 F. Supp. 3d 916, 938 (N.D. Ill. 2019), *aff'd sub nom. Barry v. Cboe Glob. Markets, Inc.*, 42 F.4th 619 (7th Cir. 2022) (preemption of negligence claim based on way CBOE

designed, tested, and promoted volatility index futures); *Troyer v. Nat'l Futures Ass'n*, No. 16-cv-00146, 2017 WL 2971962, at *11-12 (N.D. Ind. Jul. 12, 2017) (finding fraudulent misrepresentation claim preempted by the CEA because it "directly challenges the NFA's performance of its regulatory functions"); *DGM Invs.*, 2002 WL 31356362, at *5 (preemption of gross negligence claim based on exchange's failure to discover a mispricing that harmed plaintiff because it "depend[ed] on allegations that the [defendants] failed to fulfill their obligation to regulate the market"); *W. Cap. Design*, 180 F. Supp. 2d at 442 (preemption of common law fraud claim that NYMEX "conceal[ed] and fail[ed] to disclose that not all market trades would be executed in accordance with its Floor Rules"); *Vaccariello v. Fin. Partners Brokerage, Ltd.*, No. 82 C 5910, 1983 WL 1367, at *4 (N.D. Ill. July 29, 1983) (dismissing as preempted fraud and state statutory claims alleged against the Chicago Mercantile Exchange).

Because Plaintiffs' claims challenge the CME Defendants' exercise of their self-regulatory functions and "are matters for uniform federal regulation subject to review by the CFTC, not matters for review or adjudication by individual state courts," they are preempted by the CEA.

*DGM Invs.*, 2002 WL 31356362, at *5. The Court can affirm for this separate reason.

## III. Plaintiffs Failed To Plead The Elements Of Their Claims

The Court can also affirm because, as briefed below, Plaintiffs have failed to plead the elements of their negligence and aiding and abetting claims.

### A. Negligence

#### 1. Plaintiffs Have Not Pled A Duty

The CME Defendants did not owe any duty to Plaintiffs because Plaintiffs were not customers of the CME Defendants. Plaintiffs' allegations make clear that Plaintiffs' relationship was with Defendant BOC Group. Plaintiffs, themselves, did not trade WTI futures contracts directly on NYMEX. Rather, they were economically exposed to the WTI futures contracts through the COT because it was a "derivative investment product encapsulating" the value of WTI futures contracts. PAA 18 (Compl. ¶ 1). As Plaintiffs alleged, whatever "trading" that was done of the WTI futures contracts underlying the COT derivative was conducted through the BOC app, PAA 32 (Compl. ¶ 65), during the hours set by Defendant BOC Group, PAA 28-29 (Compl. ¶ 48), subject to the rollover terms set by Defendant BOC Group, PAA 27 (Compl. ¶ 44), and

24

*traded by Defendant BOC Group* on NYMEX allegedly in a manner to avoid position limits, PAA 27 (Compl. ¶ 43). Thus, any actual COT-related trading of WTI futures contracts on NYMEX was by Defendant BOC Group, not Plaintiffs. Plaintiffs have not disputed that the COT itself was never traded on NYMEX. There is therefore no relationship between Plaintiffs and the CME Defendants that could even arguably have given rise to a duty of care.

Plaintiffs' attempt below to argue that the CME Defendants owed a duty arising from the Bank Secrecy Act ("BSA") is meritless because the BSA does not impose know-your-customer obligations on exchanges, and it creates no duty of care. *Aiken v. Interglobal Mergers & Acquisitions*, No. 05-cv-5503, 2006 WL 1878323, at *2 (S.D.N.Y. July 5, 2006) (dismissing negligence claim because there is no duty of care arising from the BSA or Patriot Act); *see also* 31 U.S.C. § 5312(c)(1)(A) (placing KYC obligations on futures commission merchants, not exchanges); Rule 2-30 (Customer Information and Risk Disclosure), *National Futures Association Rulebook* (same).

25

2.     Plaintiffs Have Not Pled Proximate Causation

Plaintiffs argued below that "but for" the CME Defendants' alleged failure to "apply enhanced due diligence to accounts involving foreign person[s]," Plaintiffs would not have been injured.  PAA 23, 31 (Compl. ¶¶ 28, 58).  "But for" causation, however, is not the same as proximate causation.  *See Burlington Ins. Co. v. NYC Transit Auth.*, 29 N.Y.3d 313, 321-22 (2017).  And it is not enough.  "[N]egligence qualifies as a proximate cause where it is a substantial cause of the events which produced the injury."  *Mazella v. Beals*, 27 N.Y.3d 694, 706 (2016) (internal quotation and citation omitted).

This theory of causation does not work for the same reason there is no duty: the BSA does not impose KYC obligations on exchanges.  But even if it did, Plaintiffs have not plausibly alleged how the CME Defendants' knowing the identities of Plaintiffs would have prevented Defendant BOC Group from allegedly defrauding them.

**B.    Aiding And Abetting**

Plaintiffs have not alleged: "(1) the existence of an underlying fraud; (2) knowledge of this fraud on the part of the aider and abettor; and (3) substantial assistance by the aider and abettor in achievement of

the fraud." *Stanfield Offshore Leveraged Assets, Ltd. v. Metro. Life Ins. Co.*, 64 A.D.3d 472, 476 (1st Dep't 2009).

### 1. Plaintiffs Have Not Pled Actual Knowledge

Plaintiffs concede that the CME Defendants did not have actual knowledge of the alleged fraud. PAA 23, 27, 31 (Compl. ¶¶ 28, 43, 58). On this basis alone, the aiding and abetting claim should be dismissed. *Stanfield*, 64 A.D.3d at 476. Any efforts by Plaintiffs to argue constructive knowledge are non-starters. Constructive knowledge of the purported misconduct does not satisfy the actual knowledge inquiry. *Krys v. Pigott*, 749 F.3d 117, 127-28 (2d Cir. 2014) (New York law requires actual knowledge of the fraud as discerned from the surrounding circumstances; constructive knowledge does not suffice).[3]

Finally, any attempt to allege actual knowledge based on a letter Defendant BOC Group allegedly sent to "Defendant CME" on April 29, 2020 fails. Whatever that alleged letter might have said (Plaintiffs allege

---

[3] Plaintiffs' allegations also do not support a "conscious avoidance theory." Even if such a theory is available under New York law, it only applies where defendants were aware of a "high probability" of a relevant fact and "consciously avoided confirming that fact." *See Krys*, 749 F.3d at 131-32. Plaintiffs here have not alleged any facts to support the conclusion that the CME Defendants "refrained from investigating facts . . . specifically to avoid knowledge of the fraud." *Zamora v. FIT Int'l Group Corp.*, 834 F. App'x 622, 628 (2d. Cir. 2020) (summary order).

27

only that it inquired about volatile trading on April 21, 2020), it cannot have provided actual knowledge for aiding and abetting because the letter arrived after the alleged fraud had already taken place. *See* PAA 34 (Compl. ¶ 73) (alleging Plaintiffs were harmed due to trading that occurred on April 20, 2020).

### 2. Plaintiffs Have Not Pled Substantial Assistance

The Complaint utterly fails to allege how the CME Defendants assisted the alleged fraud. Plaintiffs cannot rely on their allegations regarding supposedly necessary enhanced diligence to identify COT customers of Bank of China Ltd. under the Bank Secrecy Act because, as mentioned above, the BSA does not impose such an obligation on exchanges. Regardless, Plaintiffs cannot explain how such diligence would have prevented the fraud.

### 3. Plaintiffs Have Not Pled The Elements Of The Underlying Fraud

The District Court correctly held that Plaintiffs did not plead the facts of the underlying fraud with particularity under Rule 9(b). Without an underlying fraud, there cannot be aiding and abetting liability.

## IV. The Dismissal Of The Claims Against CMEG Should Also Be Affirmed On Improper Group Pleading Grounds

Plaintiffs improperly conflate CMEG and NYMEX in violation of Rule 8. *See* PAA 21 (Compl. ¶ 17). There are no allegations in the Complaint specific to CMEG and no allegations sufficient to pierce the corporate veil. Plaintiffs acknowledge that CMEG is "the holding company for several financial derivatives exchanges including . . . NYMEX." PAA 21 (Compl. ¶ 15). Plaintiffs have not pled that CMEG "dominates" NYMEX "in such a way as to make it a 'mere instrumentality' of" CMEG. *New York State Elec. & Gas Corp. v. FirstEnergy Corp.*, 766 F.3d 212, 224 (2d Cir. 2014). They have not pled "the absence of [corporate] formalities," "inadequate capitalization," a lack of "business discretion," or any of the other numerous factors courts consider to determine whether a subsidiary is a "mere instrumentality." *See id.* Dismissal as to CMEG can be affirmed on this basis as well.

## V. Leave To Amend Was Properly Denied

The District Court did not abuse its discretion in denying Plaintiffs leave to amend the claims against the CME Defendants. While Plaintiffs offered a number of new potential (though meritless) claims against the Bank of China-affiliated defendants, they failed to suggest any new

29

claims or allegations as to which the CME Defendants would not have immunity. PAA 12-14. The District Court's reasoning also applies equally if this Court affirms on the basis of preemption instead. And if Plaintiffs had any evidence that the CME Defendants had actual knowledge of Defendant BOC Group's scheme, any relationship giving rise to a duty, or that the scheme had any direct connection to the CME Defendants at all, Plaintiffs could have pled it in their 124-paragraph, 8-count Complaint or mentioned it to the District Court when they asked for leave to amend. They did not. Denial of leave to amend was the right result.

## CONCLUSION

For the reasons stated above, this Court should affirm the District Court's judgment dismissing the Complaint in its entirety against the CME Defendants and denying Plaintiffs leave to amend.

Dated: August 19, 2024                    Respectfully submitted,

*/s/ Shari A. Brandt*
SHARI A. BRANDT
MATTHEW M. RICCARDI
Perkins Coie LLP
1155 Avenue of the Americas,
22nd Floor
New York, NY 10036
Tel: (212) 262-6900

*Counsel for Defendants-Appellees CME Group, Inc. and New York Mercantile Exchange, Inc.*

31

## CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATION, TYPEFACE REQUIREMENTS, AND TYPE STYLE REQUIREMENTS

This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) and Second Circuit Rule 32.1(a)(4) because the brief contains 5,755 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f).

This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Century Schoolbook font.

Dated: August 19, 2024          */s/ Shari A. Brandt*
                                SHARI A. BRANDT